IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELENA DIADENKO, SALLYCHIODO, DAVID TEMKIN and ANDREW BREEN<br><br>Plaintiffs,<br><br>vs.<br><br>MARY ANN FOLINO, BOARD OF EDUCATION OF CHICAGO PUBLIC SCHOOL DISTRICT # 299, and RONALD HUBERMAN,<br><br>Defendants | Case No.: |

## COMPLAINT

Now come the plaintiffs, Elena Diadenko, Sally Chiodo, David Temkin and Andrew Breen, by and through their attorney, Steven E. Glink, pursuant to and 42 USC 1983, et seq. and complaining against the defendants, state as follows.

## JURISDICTION

1. This action is brought pursuant to the First and Fourteenth Amendment to the United States Constitution and 42 USC 1983 et. seq. There are also pendent state claims alleged herein.
2. Jurisdiction is proper pursuant to 28 USC 1331
3. Venue is proper pursuant to 28 USC 1392.

## THE PARTIES

4. At all times relevant to this Complaint, at the times of the occurrences alleged herein, Diadenko was employed by the Chicago Public Schools ("CPS") as a tenured special education teacher at Schurz High School.
5. At all times relevant to this complaint, Chiodo was employed by CPS in various capacities at Schurz High School. Amongst her duties, Chiodo has served as Schurz's treasurer, secretary and clerk.

-1-

6. At all times relevant to this complaint, Temkin was employed by CPS as a social worker. Relevant to this complaint, Temkin was assigned to provide social work services to special education and general students at Schurz High School.
7. At all times relevant to this complaint, Breen was employed by CPS as a probationary English teacher at Schurz High School. A part of Breen's duties included teaching special education students at Schurz High School.
8. At all times relevant to this complaint, Mary Ann Folino was employed by CPS as the principal at Schurz High School.
9. At all times relevant to this complaint, Ron Huberman was employed as the CEO of the CPS and was charged with the duty of running the district on a day to day basis.
10. Schurz High School ("Schurz") is a public high school owned and operated by the Board of Education ("the Board") and is located in Chicago, Cook County, Illinois.
11. The District is a recipient of federal and state funds.
12. District # 299 ("the District") and the Board are body politics organized pursuant to various laws of the State of Illinois, including but not limited to the Illinois School Code, 105 ILCS 5/10-1. et seq.
13. All individual defendants are sued in their official capacities.
14. At all times relevant to the events alleged in the Complaint, all defendants acted under color of law via the power and authority of granted to them by State law as well as the mandates of various federal laws (i.e., the IDEA, The Rehabilitation Act of 1973 and the Americans With Disabilities Act).

### FACTS COMMON TO ALL COUNTS

15. At various times during the course of their employment at Schurz, all plaintiffs became aware of various and numerous violations of the law being committed by the Schurz staff with the knowledge and consent of the principal, Ms. Folino. For example, the plaintiffs became aware of such things such as:
    A. Parents were not notified of IEP meetings (for their special education children) as required by law;
    B. Folino directed staff members to sign off on IEPs even though the staff member did not attend the IEP meeting;

C. The Schurz staff was not providing the education and related services required by student's IEPs and/or 504 plans;

D. Some of Schurz's special education staff were not legally qualified to teach the class they were teaching;

E. Falsifying information to the Illinois State Board of Education during special education audits;

F. On several occasions, Folino engaged in the practice of ghost student enrollment;

G. Folino was paying students for information about students' gang status.

16. Each plaintiff spoke out on matters of public concern (i.e., the welfare of special education students) by complaining to Folino and CPS' Office of the Inspector General ("OIG") that the complained of conduct was illegal and detrimental to the students, the staff, the school and the community.

17. In response to the plaintiffs' complaints, Folino took retaliatory action against each of the plaintiffs including but not limited to the following:

A. Diadenko has received to disciplinary suspensions (with loss of pay) and a new charge was just filed on 4/15/10 (a copy of which is attached);

B. Chiodo, who worked for 25 years in the same office at Schurz, was immediately relocated to a cubicle. In addition, Chiodo lost her parking spot, which was close to Schurz and was required due to Chiodo's arthritic condition. In addition, Folino completely stripped Chiodo of all of her prior job duties and reassigned her to menial type jobs/duties, which caused a loss of $20,000 in annual overtime pay. On information and belief, Folino directed one of her colleagues to place a dead rat on Chiodo's desk;

C. Temkin began receiving critical letters and reprimands over his job performance, which had been considered excellent before he spoke out. Temkin was immediately removed from Schurz with no opportunity to explain his reassignment to his students. Folino publicly berated Temkin in front of staff and students disparaging his professional reputation;

    D. Breen was told to either lie about IEP compliance or to keep his mouth shut and that if he did not, Folino would make sure he was fired;

    E. Each and every plaintiff was continually verbally abused by Folino, both in public and private. Each plaintiff was harassed so badly by Folino that they sustained severe emotional distress.

18. Each plaintiff submitted complaints to CPS' OIG. OIG accepted these complaints and purported to investigate. However, at the time that this case was filed, OIG has not issued any findings or taken any corrective action, thereby leading the plaintiffs to believe that OIG intentionally stalls their investigations.

19. On information and belief, both the Board and Huberman have knowledge that CPS in general and Schurz in particular, does not comply with special education laws. Plaintiffs also allege that the Board and Huberman have knowledge that Folino retaliates against any staff member that reports her misconduct to any higher authority and that the Board and Huberman ignore Folino's misconduct.

20. Plaintiffs have paid legal fees in an attempt to rectify this situation.

## COUNT I-VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHTS

21. Plaintiffs reallege their allegations in paragraphs 1-20 above as their allegations for count I.

22. Plaintiffs' speech on matters of public concern (i.e., the welfare of special education students; non-compliance with federal and state laws and public corruption) was protected by the First and Fourteenth Amendments to the United States Constitution.

23. Folino's actions were taken in retaliation for the plaintiffs' exercise of their Constitutional rights. Folino's actions were also taken with the intent to deter plaintiffs and others from speaking out on matters of public concern.

24. On information and belief, the Board and Huberman have a custom, practice and policy of inaction regarding complaints of misconduct, especially complaints about special education non-compliance.

25. As a direct and proximate result of defendants' conduct, defendants jointly and severally have caused monetary and emotional damage to the plaintiffs. Wherefore, plaintiffs respectfully pray that judgment be entered against the defendants, jointly and severally, in an amount in excess of $75,000.00 for each plaintiff plus costs and attorney's fees.

## COUNT II-VIOLATION OF PLAINTIFFS' FEDERAL RIGHT TO DUE PROCESS AND EQUAL PROTECTION

26. Plaintiffs reallege their allegations in paragraphs 1-25 as their allegations for count II.
27. All plaintiffs constitute a class of one in that they were all singled out for retaliation by Folino solely because the plaintiffs stood up and spoke out and made formal complaints about improper and illegal things that were going on at Schurz High School and in particular, with Folino's knowledge and direction.
28. Folino in fact retaliated against all plaintiffs for speaking out and making formal complaints.
29. CPS and Huberman had actual and constructive knowledge that the plaintiffs spoke out and made official complaints about Folino's misconduct and about the illegal/improper conduct taking place at Schurz High School.
30. CPS and Huberman had actual and constructive knowledge that Folino had taken retaliatory action against the plaintiffs in an effort to punish them and to deter them from speaking out in the future.
31. Defendants had a duty to refrain from taking any retaliatory actions against the plaintiffs and/or had a duty to prevent any retaliatory actions from being taken against the plaintiffs.
32. Despite having actual and constructive knowledge of all of the above, CPS and Huberman took no action to stop or deter Folino's retaliatory actions against the plaintiffs.
33. As a direct and proximate result of the defendants' actions and/or inactions, plaintiffs suffered severe emotional harm and harm to their personal and professional reputation.

Wherefore, plaintiffs respectfully pray that this Honorable Court enter judgment in their favor and against all defendants, jointly and severally in an amount in excess of $75,000 for each plaintiff plus costs and reasonable attorney's fees.

### COUNT III-CHIODO ASBESTOS EXPOSURE

34. Plaintiff Chiodo was employed at Schurz for over 25 years as the school clerk, principal's secretary and school treasurer.
35. During the dates of her employment, Chiodo was unknowingly exposed to asbestos particles.
36. In 2009, Folino directed certain school workers to remove asbestos tiles from Chiodo's work place.
37. The existence of the presence of asbestos in the workplace environment is prohibited by OSHA standards.
38. As a direct and proximate result of defendants' conduct, Chiodo has suffered various medical symptoms associated with asbestos exposure.

Wherefore, Sally Chiodo respectfully prays that the Court award her damages against the defendants, jointly and severally, in an amount in excess of $75,000 plus costs.

### COUNT IV-VIOLATION OF CPS WHISTLE BLOWER STATUTE

39. Plaintiffs reallege their allegations in paragraphs 1-33 above as their allegations for count IV.
40. At all time relevant to this complaint, state law provided that no CPS employee who reported misconduct may be disciplined (see: 105 ILCS 5/34-2.4c).
41. The defendants' actions, which were taken under color of law, in this case constitute a violation of plaintiffs' state law rights to "whistle blower" protections.
42. Under 42 USC 1983, defendants are liable to plaintiffs for violations of their civil rights.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court enter judgment on their behalf and against the defendants, jointly and severally in an amount in excess of $75,000.00 for each plaintiff plus costs and attorney's fees.

Plaintiffs further pray that this Honorable Court enter an order compelling all defendants to rescind any and all disciplinary actions against the plaintiffs, to reimburse them for any and all lost revenues and to order that each plaintiffs' personnel file be purged of any and all negative references due to any act by Folino.

### COUNT V-VIOLATION OF STATE WHISTLE BLOWER STATUTE

43. Plaintiffs reallege their allegations of paragraphs 1-33 as their allegations for count V herein.
44. The State Whistle Blower Act, 740 ILCS 174/10 & 174/20) protects employees who report employer misconduct from retaliation.
45. Diadenko, Temkin and Chiodo reported Folino's/ Schurz's staff's acts of misconduct to the OIG.
46. The complaints made by all plaintiffs were related to violations of state and federal law (i.e., special education). Further, plaintiffs' complaints related to the health and welfare of the public and were based on established principles of public policy.
47. Defendants' actions constitute a willful violation of the state Whistle Blower Act, particularly because their acts were meant to deter others from reporting/corroborating acts of misconduct.
48. As a direct and proximate result of the defendants' collective actions, plaintiffs have suffered injuries as described above, including but not limited to loss of pay, loss of reputation. Plaintiffs also suffered severe emotional distress. Plaintiffs have also had to expend sums of money to hire an attorney.

Wherefore, plaintiffs respectfully pray that this Honorable Court judgment against the defendants, jointly and severally in an amount in excess of $75,000.00 for each plaintiff, plus costs and reasonable attorney's fees.

### COUNT VI- INFLCTION OF EMOTIONAL DISTRESS (PENDENT STATE CLAIM)

49. Plaintiffs reallege their allegations in paragraphs 1-33 above as their allegations herein.
50. Defendants' conduct as described herein is extreme and outrageous.
51. Folino's conduct is particularly extreme and outrageous as she has used her power over the plaintiffs as their principal to punish and abuse them.

52. Folino took her actions with the intent that the plaintiffs suffered severe emotional distress.
53. Plaintiff did suffer severe emotional distress as each plaintiff was forced to take medical leaves of absence.

Wherefore, plaintiffs respectfully pray that this Honorable Court enter judgment against the defendants jointly and severally in favor of each plaintiff, in an amount in excess of $75,000.00 plus costs and attorney's fees.

Respectfully Submitted,

By: S/STEVEN E. GLINK
STEVEN E. GLINK

LAW OFFICES OF STEVEN E. GLINK
ATTORNEY FOR PLAINTIFFS
ARDC # 6180869
3338 COMMERCIAL AVENUE
NORTHBROOK, ILLINOIS 60062
847/480-7749 (Voice)
847/480-9501 (Facsimile)